IN THE UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CURTIS HOLLIDAY, | No. CIV S-07-1422-CMK-P |
| Plaintiff, | |
| vs. | MEMORANDUM OPINION AND ORDER |
| ALVARO C. TRAQUINA, | |
| Defendant. | |
| _____/ | |

Plaintiff, a state prisoner proceeding pro se, brings this civil rights action pursuant to 42 U.S.C. § 1983. Pursuant to the written consent of all parties, this case is before the undersigned as the presiding judge for all purposes, including entry of final judgment. See 28 U.S.C. § 636(c). Pending before the court are the parties' motions for summary judgment (Docs. 45 and 46).

/ / /

/ / /

/ / /

/ / /

/ / /

# I. BACKGROUND

A. **Plaintiff's Allegations**

This action proceeds on plaintiff's original complaint. Plaintiff states that he injured a finger on his right hand on September 9, 2006, while playing football. He reported to the prison medical clinic where he was treated by P. Campbell, a nurse. Campbell wrapped the finger, provided pain relievers, and recommended a follow-up with a prison doctor. According to plaintiff, an x-ray was taken on September 11, 2006, which revealed a fracture of the right fourth finger. On September 12, 2006, he was seen by Dr. Naku, who placed a splint on plaintiff's finger and ordered an orthopedic consultation within seven days.

After a week had passed with no further treatment, plaintiff submitted an inmate appeal requesting treatment. He stated that he was in terrible pain and that the medication he had been given was not effective. Plaintiff also stated in his appeal that he was unable to use his right hand at all and that he feared permanent damage. Plaintiff was seen on September 19, 2006, by Dr. Naku. Plaintiff states that Dr. Naku told him that he was still awaiting authorization for an outside consultation and that the doctor continued him on his current pain medication. On September 20, 2006, plaintiff wrote a "personal letter" to defendant Traquina complaining of the pain in his finger and informing him that he had not received any treatment. On September 26, 2006, plaintiff received a response from defendant Traquina indicating that a "consultation was written" and that "an appointment is pending scheduling." On September 29, 2006, defendant Traquina issued a second level response to plaintiff's inmate appeal, concluding that his medical issues have been addressed and that the treatment he has received to date was appropriate.

As of October 12, 2006, plaintiff still had not seen an orthopedic specialist for consultation and plaintiff submitted his appeal for review at the director's level. In this appeal, plaintiff noted that it had been over a month since his injury. Plaintiff submitted another inmate appeal on November 9, 2006, complaining that he still had not received adequate treatment for his finger. He requested that he immediately be taken to an outside hospital for consultation and

treatment "so I do not lose the use of my finger." On November 27, 2006, plaintiff received a response to his most recent appeal from Dr. Hsieh. According to plaintiff, the doctor stated that "[a]n urgent referral has been submitted on your behalf." As of December 10, 2006, plaintiff still had not been scheduled for an outside consultation and he submitted another inmate appeal. This appeal was answered at the director's level on December 27, 2006, with an indication that no unresolved issues remained because his earlier appeals had been partially granted.

On January 8, 2007, plaintiff received a response to an earlier appeal stating that "efforts are being made to get you evaluated by a hand surgeon at U.C. San Francisco." As of May 9, 2007, plaintiff still had not been scheduled for an outside consultation and plaintiff requested an interview with defendant Traquina. Plaintiff states that he was finally taken to U.C. San Francisco for an outside consultation on June 22, 2007. He states that his injured finger was re-broken, tendons in the finger were removed, and the finger was set in what he describes as a "permanent claw" position. Plaintiff states that the attending physician at U.C. San Francisco told him that, had he received treatment within one month of the injury, he could have expected a full recovery.

**B.     The Parties' Evidence**

Defendant's evidence consists of his own declaration. Defendant contends the following facts are undisputed:

    1.    At all relevant times, defendant was the prison chief medical officer and health care manager, whose duties included overseeing clinic operations, responding to health care delivery problems, reviewing medical appeals filed by inmates, and implementing inmate patient transfers.

    2.    Defendant's office received a letter from plaintiff on September 22, 2006, in which plaintiff requests to be seen by a specialist for his fractured finger.

    3.    On September 26, 2006, defendant responded by informing plaintiff that a consult request would be written the next day and that the matter was pending scheduling.

    4.    On September 25, 2006, defendant was assigned to provide a second level response to plaintiff's inmate appeal.

5. Defendant responded to the appeal on September 29, 2006, and granted the appeal insofar as plaintiff's case was in the process of being referred for an outside consultation.

6. Plaintiff was evaluated by Dr. Shifflett at an outside hospital on October 13, 2006. The doctor reported that plaintiff required hand surgery within the next couple of weeks at the latest.

7. On November 8, 2006, an urgent referral to a hand surgeon was requested based on Dr. Shifflett's October 13, 2006, report.

8. Plaintiff filed a second inmate appeal on November 9, 2006, complaining that he still had not been referred for hand surgery.

9. In the second level appeal response, plaintiff was informed that a request for surgery referral had been approved and the request was faxed to U.C. Davis Medical center the first week of November 2006. He was also informed that, after no appointment had been scheduled by U.C. Davis Medical Center, the request was sent to a hand surgeon at U.C. San Francisco Medical Center, Dr. Mathias Masem, M.D.. The earliest available appointment Dr. Masem was March 1, 2007.

10. Plaintiff underwent successful surgery to repair his finger on June 22, 2007.

Defendant adds that Dr. Masem could have scheduled the surgery for an earlier date had he felt it was necessary and that the prison has no control over private doctors' schedules. Finally, defendant states:

> In my expert opinion, any delay in surgery to plaintiff's injured finger did not cause additional harm. The deformity noted by Dr. Shifflett in October 2006 was identical to the deformity noted by Dr. Masem in March 2007. In my expert opinion, Dr. Masem would have performed the same surgery in October 2006 that he performed in June 2007, with similar successful results.

Plaintiff's evidence consists of his own declaration, in which he largely recites the allegations set forth above. He also attaches the following exhibits:

Exhibit A    September 9, 2006, Health Care Services Request Form in which plaintiff requests medical treatment for his right finger. The form indicates that, on objective examination, plaintiff's right hand 4th finger was swollen and discolored. Plaintiff was provided pain medication and instructed to apply ice. He was also instructed to watch for increased swelling and decreased circulation. Plaintiff was told to return on September 11, 2006, for follow up.

4

| | | |
|---|---|---|
| | Exhibit B | Medical chart note dated September 9, 2006, reflecting plaintiff's treatment as outlined in Exhibit A. |
| | Exhibit C | Medical chart note dated September 12, 2006, reflecting that plaintiff's injured finger had been splinted. The doctor ordered an orthopedic consultation. |
| | Exhibit D | Medical chart note dated September 12, 2006, in which it is noted that plaintiff complained that his finger was immobile. On examination, the doctor noted that plaintiff was not in distress and was stable. There was marked tenderness in the right 4th finger, with an inability to flex. Probable fracture was diagnosed. |
| | Exhibit E | Inmate grievance, log no. 06-03222, submitted on September 18, 2006. Plaintiff complained that he had not received attention for his injured finger, which was causing constant pain. The appeal was granted by defendant Traquina at the second level of review in that he ordered that plaintiff be referred for outside consultation. The form also reflects that, as of October 10, 2006, plaintiff still had not been referred to an outside orthopedist. |
| | Exhibit G[1] | Letter dated September 20, 2006, addressed to the prison Chief Medical Officer, defendant Traquina, outlining the problems with obtaining an outside orthopedic consultation. |
| | Exhibit H | Response from defendant Traquina dated September 26, 2006. The response indicates: "A consultation was written on 9/27/06 for ortho and an appointment is pending scheduling." The response also indicates that plaintiff inmate appeal had been received from the appeals department on September 21, 2006. |
| | Exhibit I | Note dated September 28, 2006, indicating that a request for an outside orthopedic consultation had been faxed to an outside doctor on September 27, 2006. |
| | Exhibit J | Formal second level appeal response dated September 29, 2006, written by defendant Traquina. Defendant Traquina outlines the following second level findings: |

> . . . Your orthopedic consult had been sent twice to the orthopedic office and was pending a response from the office. After intervention on this date, you have a scheduled appointment the early part of October. . . .

///

---

[1] Plaintiff's documents do not contain an Exhibit F.

5

|  |  |
|---|---|
| Exhibit K | Consultation notes prepared by outside doctor Michael W. Shifflett, M.D. On physical examination, the doctor noted hyperextension deformity of the right 4th finger. X-rays showed a fracture. Dr. Shifflett stated that plaintiff needs referral "on a relatively urgent basis" to a hand surgeon. The doctor said this should occur "within the next couple of weeks at the latest." |
| Exhibit L | Hospital operative report on hand surgery perform on plaintiff on June 22, 2007. |

In his declaration, plaintiff adds: "Plaintiff was told . . . by the attending physician [Dr. Masem] that had he received treatment within a month of the injury, he could have expected a full recovery."

## II. STANDARDS FOR SUMMARY JUDGMENT

Summary judgment is appropriate when it is demonstrated that there exists "no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). Under summary judgment practice, the moving party

> . . . always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact.
>
> Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

"[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'" Id. Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. Id. at 322. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id. In such a circumstance, summary judgment should be granted, "so long as

6

whatever is before the district court demonstrates that the standard for entry of summary judgment, as set forth in Rule 56(c), is satisfied." Id. at 323.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of its pleadings but is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists. See Fed. R. Civ. P. 56(e); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, i.e., a fact that might affect the outcome of the suit under the governing law, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, i.e., the evidence is such that a reasonable jury could return a verdict for the nonmoving party, Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

In the endeavor to establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the court examines the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any. See Fed. R. Civ. P. 56(c). The evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587.

1  Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to
2  produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen
3  Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir.
4  1987).  Finally, to demonstrate a genuine issue, the opposing party "must do more than simply
5  show that there is some metaphysical doubt as to the material facts . . . .  Where the record taken
6  as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no
7  'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

### III.  DISCUSSION

In his motion for summary judgment, defendant Traquina argues that plaintiff cannot establish that he was deliberately indifferent to a serious medical need. Specifically, defendant asserts:

> Plaintiff sues Dr. Alvaro Traquina solely due to his role as a second level reviewer for plaintiff's 602 appeal regarding his fractured finger. Dr. Traquina granted plaintiff's appeal at the second level of review. Dr. Traquina's office intervened and obtained an orthopedic appointment as soon as it became aware that an urgent orthopedic consult was sent twice to an orthopedic office and was pending a response from the outside orthopedic office.
> Dr. Alvaro Traquina always treated plaintiff with dignity and respect in an honest effort to facilitate the treatment of his finger condition, and never intentionally or knowingly delayed medical treatment or caused plaintiff to suffer any pain, suffering, injury, or harm. . . .

In his motion for summary judgment, plaintiff argues that defendant ". . . did not provide Plaintiff with appropriate medical care and treatment in compliance with the applicable standard of care. . . ." In particular, plaintiff complains of delay in obtaining medical treatment.

The treatment a prisoner receives in prison and the conditions under which the prisoner is confined are subject to scrutiny under the Eighth Amendment, which prohibits cruel and unusual punishment. See Helling v. McKinney, 509 U.S. 25, 31 (1993); Farmer v. Brennan, 511 U.S. 825, 832 (1994). The Eighth Amendment ". . . embodies broad and idealistic concepts of dignity, civilized standards, humanity, and decency." Estelle v. Gamble, 429 U.S. 97, 102

(1976). Conditions of confinement may, however, be harsh and restrictive. See Rhodes v. Chapman, 452 U.S. 337, 347 (1981). Nonetheless, prison officials must provide prisoners with "food, clothing, shelter, sanitation, medical care, and personal safety." Toussaint v. McCarthy, 801 F.2d 1080, 1107 (9th Cir. 1986). A prison official violates the Eighth Amendment only when two requirements are met: (1) objectively, the official's act or omission must be so serious such that it results in the denial of the minimal civilized measure of life's necessities; and (2) subjectively, the prison official must have acted unnecessarily and wantonly for the purpose of inflicting harm. See Farmer, 511 U.S. at 834. Thus, to violate the Eighth Amendment, a prison official must have a "sufficiently culpable mind." See id.

Deliberate indifference to a prisoner's serious illness or injury, or risks of serious injury or illness, gives rise to a claim under the Eighth Amendment. See Estelle, 429 U.S. at 105; see also Farmer, 511 U.S. at 837. This applies to physical as well as dental and mental health needs. See Hoptowit v. Ray, 682 F.2d 1237, 1253 (9th Cir. 1982). An injury or illness is sufficiently serious if the failure to treat a prisoner's condition could result in further significant injury or the ". . . unnecessary and wanton infliction of pain." McGuckin v. Smith, 974 F.2d 1050, 1059 (9th Cir. 1992); see also Doty v. County of Lassen, 37 F.3d 540, 546 (9th Cir. 1994). Factors indicating seriousness are: (1) whether a reasonable doctor would think that the condition is worthy of comment; (2) whether the condition significantly impacts the prisoner's daily activities; and (3) whether the condition is chronic and accompanied by substantial pain. See Lopez v. Smith, 203 F.3d 1122, 1131-32 (9th Cir. 2000) (en banc).

The requirement of deliberate indifference is less stringent in medical needs cases than in other Eighth Amendment contexts because the responsibility to provide inmates with medical care does not generally conflict with competing penological concerns. See McGuckin, 974 F.2d at 1060. Thus, deference need not be given to the judgment of prison officials as to decisions concerning medical needs. See Hunt v. Dental Dep't, 865 F.2d 198, 200 (9th Cir. 1989). The complete denial of medical attention may constitute deliberate indifference. See

Toussaint v. McCarthy, 801 F.2d 1080, 1111 (9th Cir. 1986).  Delay in providing medical treatment, or interference with medical treatment, may also constitute deliberate indifference.  See Lopez, 203 F.3d at 1131.

Defendant argues that he and prison staff did their best to schedule plaintiff's outside consultations and surgery and that any delay did not cause plaintiff further injury.  Where delay is alleged, the prisoner must demonstrate that the delay led to further injury.  See McGuckin, 974 F.2d at 1060.  The court agrees with defendant that, on the undisputed evidence properly before the court, plaintiff cannot show that his condition was made worse by the passage of time.  Defendant has presented evidence indicating that plaintiff's finger was in essentially the same condition on September 9, 2006, when plaintiff was first examined, as it was on March 1, 2007, when plaintiff was evaluated prior to surgery by Dr. Masem.  Specifically, on September 9, 2006, it was noted that plaintiff's finger was swollen and discolored.  On September 12, 2006, it was noted that plaintiff was not in any acute distress, though he was unable to flex the finger and tenderness was noted.  A probable fracture was diagnosed at that time.   On October 13, 2006, plaintiff was evaluated by Dr. Shifflett who noted a fracture deformity and difficulty with flexion.  While the doctor stated that a further consult with a surgeon was needed on an urgent basis, Dr. Shifflett did not specifically opine that surgery was needed.  Rather, he indicated the need for further consultation for "exploration and presumed [surgical] repair."  When plaintiff was examined by Dr. Masem in March 2007, the doctor noted essentially the same findings.  Finally, operative notes from plaintiff's June 2007 surgery reflect that the procedure was successful, providing plaintiff "full flexion of the proximal interphalangeal joint. . . ."  All this evidence indicates that plaintiff's finger was not further injured by the passage of time between the date he was first injured and the date successful surgery was performed.

Plaintiff contends that his hand is now permanently deformed and that, but for the delay, he would have made a full recovery.  In support of this contention, plaintiff states that he was told by Dr. Masem that he could have expected a full recovery had he received treatment

sooner.  This statement, set forth in both the complaint as well as plaintiff's declaration in support of summary judgment, is inadmissable hearsay as it is Dr. Masem's out-of-court statement offered to prove the fact of the matter stated.  Further, there is no evidence whatsoever that plaintiff's hand is currently deformed or in any worse condition that it was shortly after the September 2006 injury.  Defendant Traquina, himself a medical expert, has offered his expert opinion that the delay did not exacerbate plaintiff's injury and that, whether surgery had been performed in September 2006 or June 2007, the result would have been the same.

### IV.  CONCLUSION

Because the undisputed evidence properly before the court indicates that any delay in obtaining surgery did not result in further injury beyond the initial injury sustained in September 2006, plaintiff cannot prevail.

Accordingly, IT IS HEREBY ORDERED that:

1. Defendant's motion for summary judgment (Doc. 45) is granted;
2. Plaintiff's motion for summary judgment (Doc. 46) is denied; and
3. The Clerk of the Court is directed to enter judgment in favor of defendant and against plaintiff and to close this file.

DATED: November 15, 2010

_____
**CRAIG M. KELLISON**
UNITED STATES MAGISTRATE JUDGE